**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| YOUSEF RAFATI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CV-05680 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| BLUE CROSS BLUE SHIELD | ) | |
| OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Yousef Rafati, who is Palestinian (national origin), Arabic (race), and Muslim (religion), started working for Blue Cross Blue Shield of Illinois in 2012 and was a Service Representative and senior-level accountant in the company's Financial Operations Department. R. 103, DSOF ¶¶ 8, 10, 12; R. 102-2, DSOF Exh. 2, Rafati Dep. Vol. II at 17:19–23; R. 101-23, DSOF Exh. 23, EEOC Charge of Discrimination; R. 101-6, DSOF Exh. 6, Rafati Résumé.[1] Despite consistently strong performance reviews during his tenure at Blue Cross, Rafati noticed that he was not treated the same as his coworkers—he was not promoted to roles he felt that he was qualified for, he was denied bereavement leave when his uncle passed away, and he even felt that he was demoted in 2022. DSOF ¶¶ 14, 16–23, 25–27, 29–30, 35, 40; R. 101-13. DSOF Exh. 13, 2017 Performance Review; R. 101-14, DSOF Exh. 14, 2018 Performance Review; R. 101-35, DSOF Exh. 35, 2020 Performance Review; R. 101-22,

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. The record does not clarify Rafati's current employment status.

DSOF Exh. 22; Rafati Dep. Vol. II at 150:7–11. Rafati asserts that his race, national origin, religion, and gender—and not his work performance or experience level—must have motivated Blue Cross to treat him differently than his colleagues. DSOF ¶¶ 3–5; R. 71, Supp. Compl.

So Rafati sued Blue Cross Blue Shield, alleging that he was discriminated against based on his national origin, race, religion, and sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; that he was discriminated against based on his national origin and race in violation of 42 U.S.C. § 1981; and that he was retaliated against in violation of Title VII and § 1981. R. 1, Compl.; Supp. Compl.[2] Blue Cross now moves for summary judgment, arguing that the record evidence establishes that the claims must fail. R. 100, Def.'s Mot. For the reasons set forth below, Blue Cross's motion is granted.

## I. Background

In deciding Blue Cross's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Yousef "Joe" Rafati is an Arabic, Palestinian, Muslim man. DSOF ¶ 3; Rafati Dep. Vol. II at 17:19–23; EEOC Charge of Discrimination. In 2012, he accepted a position with Blue Cross Blue Shield of Illinois as a "Service Representative II" in the company's Network Operations Department. DSOF ¶ 10; Rafati Résumé; R. 75, Def.'s Answer to Compl. ¶ 15. In that

---

[2]This Court has federal-question subject matter jurisdiction under 28 U.S.C. § 1331.

role, he "maintained provider information in [Blue Cross Blue Shield]'s system." DSOF ¶ 10; Rafati Resumé. About a year later, he was hired as an "Accountant I" on the newly formed Group Individual Reconciliation Refund team in the Financial Operations Department. DSOF ¶ 12; R. 101-30, DSOF Exh. 30. Rafati learned that his new role was a "career-path" position that would give him the chance to be evaluated and promoted to a more senior position each year. DSOF ¶ 13; R. 102-1, DSOF Exh. 1, Rafati Dep. Vol. I at 65:12–23. The progression on that team is generally from Accountant I to Accountant II to Accountant III to Supervisor. DSOF ¶ 42; R. 102-12, DSOF Exh. 33 at 2 (PDF page number). Some people can "skip" a level, but no one on Rafati's team has done so. *Id.* Rafati himself has followed this path and was promoted to Accountant II in 2017. DSOF ¶ 12; DSOF Exh. 30.

But Rafati's progress stalled there. *See id.* To Rafati's chagrin, he eventually noticed that his colleagues were consistently getting promoted faster than him. *See* DSOF ¶¶ 16–18, 20–21, 23, 25–26, 31, 33, 78; R. 39, DSOF Exh. 39. Even worse, Rafati believes that some of those colleagues were less qualified than he was. *See* R. 119, PSOF ¶ 5; *See* R. 101-11, DSOF Exh. 11. Rafati posits that at least some of his colleagues were promoted over him simply because his supervisors liked those employees more. DSOF ¶¶ 20–21, 76; R. 102-9, DSOF Exh. 21; Rafati Dep. Vol. I at 97:5–22.

Rafati noticed other allegedly disparate treatment. In December 2021, he requested bereavement leave (usually reserved for the passing of a parent) to attend his uncle's funeral, but his request was ultimately denied because he was unable to provide documentation that his uncle stood in loco parentis under Blue Cross's

3

Bereavement Leave Policy. DSOF ¶ 29; Rafati Dep. Vol. II at 149:4–20, 152:23–153:2; R. 101-41, DSOF Exh. 41, BCBS Bereavement Leave Policy. But Rafati insists that other employees were granted bereavement leave for relatives who were not as closely related to the employee. DSOF ¶ 30; Rafati Dep. Vol. II 150:7–154:15. Then, in 2022, Rafati claims that he was demoted when was moved to a backup role for some of his prior duties, though he had previously been the primary employee for the duties. DSOF ¶ 35; Rafati Dep. Vol. II at 77:12–15. Rafati also complained to Human Resources that he had a heavy workload and was assigned to too many meetings. DSOF ¶¶ 38–39; R. 101-28, DSOF Exh. 28, EEOC Charge of Discrimination Amendment. Finally, Rafati complains that his annual performance reviews were unfairly negative, especially when compared to his colleagues' reviews. *See* R. 101-47, DSOF Exh. 47. He asserts that he is "not your average employee" and "always go[es] above and beyond," so his ratings, though equal with his coworkers, should have been higher. DSOF ¶¶ 47–48, 50–53; Rafati Dep. Vol. I at 186:18–187:9. Ultimately, Rafati sees the only difference between himself and his colleagues that were treated more preferentially was that many of those colleagues are white, non-Muslim women and he is an Arabic, Muslim man. DSOF ¶¶ 3, 8, 17–18, 22–23, 26, 30, 32; EEOC Charge of Discrimination.

Several times, Rafati raised concerns about this allegedly disparate treatment with his supervisors or with the Human Resources Department. DSOF ¶¶ 19, 37–39, 57–61, 63, 65; R. 101-17, DSOF Exh, 17; Exh. 22; Exh. 33; Exh. 47. Rafati's supervisors and the Human Resources Department responded to each of his concerns head

on. On promotions, one of Rafati's supervisors explained that "multiple factors are taken into consideration when deciding whether to promote someone such that even if someone has the requisite qualifications, a business need has to be present and enough high-level work has to be available." DSOF ¶ 43; DSOF Exh. 33. On Rafati's performance reviews, his supervisor responded that even though Rafati may not have received perfect scores on some of his performance reviews, he still received a merit increase, which reflected Blue Cross's perception of the value of the score. *See* DSOF ¶ 48; R. 101-12, DSOF Exh. 12. In other instances, when Rafati received a less than perfect score, his supervisors pointed out areas of improvement that might help increase his scores in future reviews. DSOF ¶¶ 51–52; R. 101-19, DSOF Exh. 19 at 3 (PDF page number). In response to his most common complaint—that his colleagues were getting promoted more often than he was—his supervisors explained that Rafati either did not apply to those positions, those positions were managed by different supervisors, or the other employee had relevant experience that Rafati lacked. DSOF ¶¶ 18, 21, 23, 31, 35–36, 41; R. 102-4, Gonzales Decl. ¶¶ 14–16; Exh. 33; Rafati Dep. Vol. II at 120:9–121:2.

Unsatisfied with Blue Cross's response, in 2020 Rafati filed a charge with the Equal Employment Opportunity Commission alleging that he was discriminated against based on his race, religion, and national origin. DSOF ¶ 3; EEOC Charge of Discrimination. Two years later, Rafati filed a second charge, adding an allegation that he was retaliated against for reporting the discrimination that he had suffered. DSOF ¶ 3; EEOC Charge of Discrimination Amendment. Rafati received Notices of

5

Right to Sue in July 2021 and in February 2023. DSOF ¶ 4; R. 65, DSOF Exh. 65, Notice of Right to Sue.

In 2021, Rafati brought this lawsuit against Blue Cross, alleging that he was discriminated against based on his national origin, race, religion, and sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; that he was discriminated against based on his national origin and race in violation of 42 U.S.C. § 1981; and that he was retaliated against in violation of Title VII and Section 1981. Compl. Two years later, in 2023, Rafati invoked Civil Rule 15(d) to file a Supplemental Complaint of Employment Discrimination, reasserting the claims from the original complaint and adding a claim under the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*, alleging that he was discriminating against for disclosing information about his employers violating federal law. Supp. Compl.

Blue Cross now moves for summary judgment on all claims, arguing that Rafati has failed to demonstrate a genuine issue of fact and that a reasonable jury must find against him. Def.'s Mot.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences

in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Timeliness

Blue Cross first argues that the § 1981 claims and Title VII claims are each subject to statutes of limitations (albeit different ones), which results in cutting off any claims that arose after the respective limitations periods expired. Def. Br. at 3–4. For his part, Rafati does not address the timeliness of his claims under either statute. *See* Pl.'s Resp. In any event, Blue Cross is right. First, the § 1981 claims are subject to the gap-filling, general federal statute of limitations in 28 U.S.C. § 1658, which is four years. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004). Seeing as the defense argument goes unchallenged, any § 1981 claims arising

before October 25, 2017 (four years before Rafati filed his federal complaint), are time barred and cannot be considered.

On the Title VII claims, the limitations cutoff applies against any claim that arose more than 300 days before he filed the EEOC charge against Blue Cross. 42 U.S.C. § 2000e-5(e)(1); *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 687 (7th Cir. 2003). Blue Cross is correct that the Court may only consider claims that arose within 300 days of the filing of the EEOC charges (October 30, 2019, for his discrimination claims (because he filed that charge on August 25, 2020), and December 17, 2021, for his retaliation claims (that charge was filed on October 13, 2022)). *See* EEOC Charge of Discrimination; EEOC Charge of Discrimination Amendment. Again, Rafati does not respond to this argument, so the Court will not consider any claims arising before the respective 300-day windows.

Finally, and relatedly, Blue Cross asserts that Rafati did not allege race discrimination in any of his EEOC charges, so the Title VII race-discrimination claim cannot be considered. Def. Br. at 4. Rafati was required, under administrative exhaustion, to present the specific claims of discrimination in the EEOC charges, and the Court may consider only those claims that are "like or reasonably related to the allegations of the charge and growing out of" the EEOC charge. *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 818 (7th Cir. 2005) (cleaned up).[3] Rafati might have

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

8

argued (and the Court might have considered) that, even though he did not exhaust his administrative remedies on this claim, the Court can still consider his Title VII race-discrimination claim as discriminatory conduct relevant to the other discrimination claims. *Carter v. Dart*, 262 F. Supp. 3d 713, 720 (N.D. Ill. 2017) (explaining that the exhaustion requirement may be excused by way of the continuing violations doctrine if there is "sufficient evidence of a pattern or policy of discrimination"). But Blue Cross's exhaustion argument goes unchallenged. So the Court has no choice but to hold that the Title VII race-discrimination claim was not exhausted and must be dismissed.[4]

## B. Discrimination (Title VII and § 1981)

Turning to the merits, Rafati first alleges that when Blue Cross Blue Shield did not promote him beyond Accountant—even though the majority of his team members were promoted—it must have been motivated by discrimination. Supp. Compl. ¶¶ 19–20. Rafati also argues that Blue Cross's decision to deny his bereavement request was motivated by discrimination. Pl.'s Resp. at 2–3. As detailed below, however, even when the record is viewed in Rafati's favor, Blue Cross has offered so much evidence of its non-discriminatory motives for its employment decisions that there can be no genuine dispute: the company did not act out of discrimination. So Rafati

---

[4]Because race-discrimination claims under 42 U.S.C. § 1981 are not subject to the exhaustion requirement, the failure to exhaust that claim under Title VII is neither here nor there and is not a basis to dismiss the § 1981 claim.

has not created a triable issue of material fact and summary judgment must be granted in Blue Cross's favor.

Title VII of the Civil Rights Act of 1964 makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Runkel v. City of Springfield*, 51 F.4th 746, 742 (7th Cir. 2022). Rafati's discrimination claim would have survived summary judgment if "the evidence would permit a reasonable factfinder to conclude" that his race, sex, religion, or national origin caused the adverse employment action that he experienced. *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (cleaned up). Section 1981 prohibits "racial discrimination in the making and enforcing of contracts." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 393 (7th Cir. 2007). The contract at issue here is Rafati's employment contract with Blue Cross. Courts generally analyze § 1981 claims using the same standards as Title VII, *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017), so the Court will consider both claims together.

As long-established in employment-discrimination cases, Rafati may present his case in two ways at the summary judgment stage. First, he may rely on the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination, he must offer evidence that (1) he belongs to a protected class; (2) he met Blue Cross's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without his protected characteristics were treated more favorably. *Igaski*

*v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). If Rafati makes this showing, then the burden switches to Blue Cross "to offer a nondiscriminatory motive, and if the employer does so, the burden shifts back to [Rafati] to show that the employer's stated reason was a pretext." *Gamble v. FCA US LLC*, 993 F.3d 534, 537 (7th Cir. 2021) (cleaned up).

The second way to defeat a summary judgment motion is to consider all relevant evidence "as a whole." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). If Rafati proceeds this way (and he can deploy both methods, they are not mutually exclusive), then he can defeat summary judgment even without a showing of a prima facie case, so long as he offers enough circumstantial evidence that would allow a reasonable jury to find that he was the victim of discrimination. *Id.*; *see David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). In other words, would "the evidence [] permit a reasonable factfinder to conclude that [Rafati]'s race, ethnicity, sex, religion, or other proscribed factor caused the … adverse employment action"? *Ortiz*, 834 F.3d at 765. As explained next, neither path creates a genuine issue of material fact on discrimination.

### 1. *Prima Facie* Case

The first two elements of Rafati's prima facie case are not in dispute. Both parties agree that Rafati is Muslim, Arabic, and Palestinian, and employers cannot discriminate against employees on the basis of those characteristics under Title VII and § 1981 (the latter as to race). DSOF ¶¶ 8, 10, 12; Rafati Dep. Vol. II at 17:19–23; EEOC Charge of Discrimination. Both parties also agree that Rafati generally met

Blue Cross's legitimate work expectations. Indeed, an entire swath of the company's Local Rule 56.1 statement discusses Rafati's above-satisfactory performance reviews. DSOF ¶¶ 48, 50–53, 55; 2017 Performance Review; 2018 Performance Review; 2020 Performance Review. So the only prima-facie elements at issue are which of Blue Cross's decisions constituted adverse employment actions and whether similarly situated employees were treated more favorably.

### a. Adverse Employment Actions

In moving for summary judgment, Blue Cross initially classified the employment actions against Rafati into six groups: (1) Rafati was not promoted at certain times; (2) he experienced comparatively poor communication with management and the Human Resources Department; (3) he had an overly burdensome workload; (4) he was in effect demoted; (5) he unfairly received poor performance reviews from his supervisors; and (6) his bereavement-leave request was denied even though his colleagues' requests were not. Def.'s Br. at 5–11. In the summary judgment response, Rafati narrowed the case: he only advanced two adverse employment actions as the bases for the discrimination claims: (a) his "less qualified" and "less senior[]" colleagues were promoted over him; and (b) he was improperly denied bereavement leave. Pl.'s Resp. at 2–6. The other four categories of employment actions were left unaddressed by Rafati, so those claims are waived. That leaves the promotion claim and bereavement-leave claim.

***Failure to Promote.*** To make out a *prima facie* case on the promotion claim, Rafati must produce enough evidence to show that he was qualified for the positions

sought, he was rejected for the positions, and Blue Cross promoted someone outside of the protected class who was not better qualified for the positions. *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016). The burden of presenting the prima facie case is, in the first instance, on Rafati. *See Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008).

Rafati has not carried his burden to show a prima facie case. He makes broad assertions without filling in the evidentiary blanks. Rafati contends that some employees "skipped" job levels and were promoted more quickly and regularly than he was; some less-qualified employees were promoted over him; and some other employees with less seniority and in direct competition with Rafati were promoted over him. Pl.'s Resp. at 3–6. But these broad contentions are not filled in with specific facts.

First, Rafati does not present evidence of what the exact qualifications were for the jobs that he did not get. That is a crucial hole in his evidentiary presentation. Without that evidence, Rafati's reliance on his own credentials—that he had a bachelor's degree and that he had worked in his current role for at least 12 months, PSOF ¶¶ 5–6; Rafati Dep. Vol. I at 21:15–19, 35:15–23, 39:19–24—is essentially meaningless. When asserting claims of discriminatory promotion decision, employees generally should muster the facts as to each promotion position and each promotion decision. Rafati has not done that. Indeed, as Blue Cross Human Resources Manager Alexia Gonzales explained (without contradiction), in 2018 and 2019, two of the job openings that Rafati applied for were both cancelled and not even filled. Def.'s Br. at 6; Alexia Gonzales Decl. ¶ 22; R. 101-4, Gonzales Decl. Exh. 10. Also, despite his generally positive performance reviews, at the time Rafati inquired about a career-path

13

promotion to Accountant III, Rafati had only worked on quotes smaller than those handled by those in the Accountant III role. Blue Cross reasonably could conclude that he did not have sufficient work experience yet. R. 101-26, DSOF Exh. 26. And his performance reviews noted other areas for improvement, like his communication style with others. DSOF ¶¶ 51–52; DSOF Exh. 19 at 3–5 (PDF page numbers). The key point is that Rafati had to gather and to present the underlying facts for each promotion-decision sequence that did not go his way, including the qualifications for each job opening.

Even if Rafati had presented evidence that he himself was basically qualified for the promotions, he does not present any evidence that Blue Cross promoted someone outside of his protected class who was less qualified. For example, the employees who Rafati believes received the roles he applied for in 2018 and 2019 actually applied for other positions to which Rafati did not apply. *See* DSOF Exh. 39; R. 101-16, DSOF Exh. 16; R. 101-17, DSOF Exh. 17. And another supervisory role that he applied to went to an employee who had supervisory and management experience in accounting, which Rafati did not have. R. 102-5, DSOF Exh. 5, Nelson Decl. ¶¶ 4–5. In sum, Rafati fails to present a prima facie case because he has not presented the specific facts on the promotion decisions.

On top of that flaw, Rafati also fails to offer evidence that similarly situated employees outside the protected class were treated more favorably than him. To be sure, Rafati need not offer evidence of an "identically positioned" comparator, but he must offer evidence that the comparator was similar enough to him that a reasonable

14

inference of discrimination can be drawn from differential treatment. *Crain v. McDonough*, 63 F.4th 585, 592 (7th Cir. 2023). Courts have considered similarities like "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications." *Id.*

Simply put, Rafati does not offer evidence of similarly situated employees receiving better treatment. Blue Cross Blue Shield correctly points out that of the comparators he singled out, he applied to different positions and had different managers. Def.'s Br. at 8Blue Cross Blue Shield identifies ten comparators Rafati argues are similarly situated, and Blue Cross Blue Shield offers evidence refuting each:

- A Financial Operations Project Specialist II who was hired in August 2015, promoted to Financial Operations Project Consultant in November 2015, and promoted to Manager of Financial Operations in 2018. So, this employee did not skip any roles. The roles this employee was promoted to were outside of the GIRR team, and Rafati did not apply for these positions. DSOF ¶ 71; Rafati Dep. Vol. II at 105:6–109:9, 141:7–22; Supp. Compl. ¶ 33.

- A Supervisor in Accounts Receivable and Collections who was hired in September 2016 who became a Senior Supervisor in Financial Operations AR in November 2018. This employee did not skip levels through her promotions. Additionally, these roles were outside of the GIRR team, and Rafati did not apply to these roles. DSOF ¶ 72; Gonzales Decl. ¶ 6; Rafati Dep. Vol. II at 141:23–144:5.

- An employee was promoted from Accountant II to Supplier Management Analyst. Before this employee was promoted, the name of her Accountant II role changed to Analytics & Reporting Analyst. Though it may appear she skipped a level to a management position, she did not. Additionally, these roles were outside of the GIRR team, and Rafati did not apply to these roles. DSOF ¶ 73; Rafati Dep. Vol. II at 225:2–228:10; Gonzales Decl. ¶ 13.

- An employee who lateraled from Accountant I to Internal Auditor I. This employee lateraled and did not skip any levels. Additionally, these roles were outside of the GIRR team, and Rafati did not apply to these roles. DSOF ¶ 74; Rafati Dep. Vol. II 229:5–233:3; Gonzales Decl. ¶ 7.

- An Accounting Assistant who was assigned to the role in February 2019, promoted to Associate Project Delivery Specialist in 2021, and promoted again to Project Delivery Specialist in 2022. This employee did not skip any levels before becoming a specialist. Additionally, these roles were outside of the GIRR team, and Rafati did not apply to these roles. DSOF ¶ 75; Rafati Dep. Vol. II at 233:6–238:10; Gonzales Decl. ¶ 8.

- An employee who was promoted from Accountant I to Supervisor in April 2021. Unlike Rafati, this employee was promoted because she was on the decisionmaker's team and had prior experience with the team, with leadership roles, and with the people she would supervise. DSOF ¶ 76; Rafati Dep. Vol. II at 115:16—117:19, 145:8–11; Supp. Compl. ¶ 37.

16

- An employee who was promoted from Accountant I to Lead Accountant in 2022. Unlike Rafati, this employee was on the accounting team prior to her promotion. Additionally, these roles were outside of the GIRR team, and Rafati did not apply to these roles. DSOF ¶ 77; Nelson Decl. ¶ 6; Rafati Dep. Vol. II at 119:11–120:13; Supp. Compl. ¶ 40.

- Two employees who were hired as Accountant I in September 2015 and September 2017, respectively, and promoted to Accountant II, then to Accountant III by November 2018 and June 2021, respectively. Rafati does not know who made the decision to promote these employees, nor does he provide evidence of their backgrounds to support his assertion that the employees are similarly situated. Additionally, these roles were outside of the GIRR team, and Rafati did not apply to these roles. DSOF ¶ 78; Rafati Dep. Vol. II at 238:15–241:10, 246:12–247:17; Gonzales Decl. ¶¶ 9, 11; Nelson Decl. ¶ 7.

- An employee who was hired as an Accountant II in 2016 and was then promoted to an Accountant III in 2019. Rafati does not know who made the decision to promote this employee, nor does he provide evidence of their backgrounds to support his assertion that the employees are similarly situated. Additionally, these roles were outside of the GIRR team, and Rafati did not apply to these roles. DSOF ¶ 79; Rafati Dep. Vol. II at 247:18–249:2; Gonzales Decl. ¶ 12.

- An employee who was an Accountant I in 2017 then promoted to Accountant II in November 2018, promoted to Accountant III in April 2021, and again

17

promoted from Account III to Supervisor of Financial Operations AR in November 2022. Rafati does not know who made the decision to promote this employee, nor does he provide evidence of their backgrounds to support his assertion that the employees are similarly situated. Additionally, these roles were outside of the GIRR team, and Rafati did not apply to these roles. DSOF ¶ 80; Rafati Dep. Vol. II at 244:2–246:11; Gonzales Decl. ¶ 10.

For the reasons explained, Blue Cross Blue Shield provided evidence that the employees that Rafati provides as comparators are not similarly situated to him. Similarly, Rafati contends that several employees were permitted to "skip" career-path levels and were promoted faster than he was. Pl.'s Resp. at 4. But these employees were not on Rafati's team, nor did they have the same supervisor as Rafati. *See* Gonzales Decl. ¶¶ 5–8. Even more, Blue Cross offered evidence of similarly situated employees being treated exactly the same as Rafati—fed up with their lack of promotions beyond the Accountant II position, these employees left the team to seek a promotion. Def.'s Br. at 7; Gonzales Decl. ¶ 21; R. 102-24, DSOF Exh. 50. None of the employees Rafati identifies are similarly situated to him.

***Denial of Bereavement Leave.*** The denial of bereavement leave is likewise not supported by a *prima facie* case of discrimination. Rafati was denied bereavement leave when his uncle passed away in late 2021, and he asserts that other employees, "mainly white females, were granted bereavement leave for less such relationships, including a neighbor." Supp. Compl. ¶ 47; Pl.'s Resp. at 3; R. 102–18, DSOF Exh. 42.

18

But he presents no admissible evidence that other employees were approved for bereavement leave for non-familial relationships.

Instead, Rafati's Local Rule 56.1 statement only refers to evidence (his own deposition testimony) that his uncle really did stand *in loco parentis* as to Rafati. PSOF ¶¶ 2–3. But in offering supposedly similar situated comparators, his response brief refers to his own deposition testimony, and the testimony in turn offers only the hearsay statements of a former co-worker and later supervisor, Tenaya Hix. Pl.'s Resp. at 3; DSOF ¶ 30; DSOF Exh. 42; Rafati Dep. Vol. II at 150:7–154:15. Rafati testified that he had a phone conversation with Hix in which she allegedly said that a coworker, "like maybe a month or two before that, she was approved because her grand mom's *whatever, boyfriend* passed away, like not even like real married." Rafati Def. Vol. II at 151:6–10 (emphasis added). This type of hearsay statement—there is no reason to believe that Hix was speaking on a topic on which she could bind Blue Cross—is precisely what discovery tools are supposed to allow a plaintiff to dig into. Yet Rafati did not do that. Instead, at the deposition, he was confronted by his own email to HR complaining about the leave request, in which himself described the relationship as not "whatever, boyfriend," but as the coworker's "step grandfather." *Id.* at 153:6–10. And he admitted that step grandfather is "listed under the policy" as a listed family member for which bereavement leave is authorized. *Id.* at 153:13–17. Within no other evidence to offer on the bereavement claim, Rafati has failed to make a prima facie case on that claim.

### b. Pretext

Because Blue Cross has offered non-discriminatory reasons for its employment actions, Rafati must offer enough evidence from which the jury could find that the proffered reasons are pretextual. *Baraona v. Village of Niles*, 720 F. Supp. 3d 601, 614 (N.D. Ill. 2024). "[T]he only question is whether the employer's proffered reason was … a lie." *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005) (cleaned up). Evidence showing "weaknesses, implausibilities, inconsistencies, or contradictions in a stated reason that a reasonable trier of fact could find [] unworthy of credence" has supported an inference of pretext. *Liu v. Cook County*, 817 F.3d 307, 316 (7th Cir. 2016) (cleaned up). "Pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason given by an employer for an adverse employment action." *Downing v. Abbott Lab'ys*, 48 F.4th 793, 804 (7th Cir. 2022) (cleaned up). "So, in evaluating pretext, the focus is on what the decisionmakers knew, and their perceptions are controlling." *Id.* at 804–05 (cleaned up).

The only admissible evidence Rafati offers to show pretext is Blue Cross's decision to promote an employee without a bachelor's degree from Accountant I to a Supervisor role, even though Rafati has a bachelor's degree in finance. Pl.'s Resp. at 4; PSOF ¶¶ 4–5; Rafati Dep. Vol. I at 111:24–113:18, 114:2–19. But Blue Cross offers evidence—without contradiction from Rafati—that the promoted employee was not on Rafati's team, Rafati did not apply for the position that she was promoted into, and in any event the employee was better qualified based on her prior leadership experience. R. 121, Def.'s Reply at 7–8; R. 118, Pl.'s Resp. to DSOF ¶ 76.

Ultimately, Rafati does not present evidence on the pertinent inquiry: are Blue Cross's proffered reasons for its employment decisions *dishonest*? *See* Pl.'s Resp. Rafati could have made this showing if he presented evidence where the employer "depart[s] from its own internal procedures and so its explanation for its promotion decision … was dishonest." *Maier v. United Parcel Serv., Inc.*, 721 F. Supp. 3d 693, 719 (N.D. Ill. 2024) (citing *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 921, 931 (7th Cir. 2020)). Pretext has also been inferred where the differences between the employee promoted and the plaintiffs "are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified." *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 413 (7th Cir. 2018) (cleaned up). Rafati does not offer evidence like that; at most, he is contending that Blue Cross made mistakes in promoting others over him. *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (holding that there was no reasonable inference of pretext where the plaintiff merely raises a dispute on the accuracy of the reasoning behind the adverse action). In sum, Rafati fails to avoid summary judgment because he does not establish a prima facie case of discrimination.

### 4. Direct Method

Rafati's discrimination claims will still survive summary judgment if the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race … or other proscribed factor caused the … adverse employment action." *Ortiz*, 834 F.3d at 765. But none of the evidence that the Court has discussed raises an inference of discrimination. Even considered as a whole, no jury could

reasonably find that Blue Cross's employment actions were motivated by Rafati's race, religion, national origin, or gender. Because "there is no evidence of pretext … [the] non-discriminatory justifications for" Blue Cross's employment decisions "must be believed, which necessarily precludes liability under Title VII" and § 1981. *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 738 (7th Cir. 2013); *Baines*, 863 F.3d at 661.

## C. Retaliation (Title VII and 1981) and the Illinois Whistleblower Act

Finally, in the Supplemental Complaint, Rafati alleged that Blue Cross retaliated against him by giving him unfairly negative performance reviews, giving him too much work but excluding him from certain projects, and by becoming non-responsive to his requests for feedback after he filed an EEOC charge against the company. Supp. Compl. ¶¶ 69–75. But as Blue Cross points out in the summary judgment reply, Rafati's response brief makes no mention of retaliation or the Illinois Whistleblower Act at all. So those claims are waived.

## IV. Conclusion

Blue Cross Blue Shield's summary judgment motion, R. 100, is granted. The case is dismissed and final judgment shall be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 25, 2025

22